STATE of Minnesota, Appellant,

v.

Randy Scott BENDZULA, Respondent.

No. A03–656.

Court of Appeals of Minnesota.

March 16, 2004.

Mike Hatch, Attorney General, St. Paul, MN; and Pat Ciliberto, Scott County Attorney, Kevin J. Golden, Assistant County Attorney, Scott County Attorney Office, Shakopee, MN, for appellant.

John M. Stuart, State Public Defender, Theodora K. Gaitas, Assistant State Public

Defender, Minneapolis, MN, for respondent.

Considered and decided by KLAPHAKE, Presiding Judge, RANDALL, Judge, and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.*

Appellant State of Minnesota disputes the trial court's downward durational departure from state sentencing guidelines, contending that the court acted beyond its authority under the sentencing guidelines. Giving deference required for the trial court's exercise of discretion in assessing the particular circumstances of this case, we affirm.

## FACTS

In 1999, Hennepin County authorities arrested an immigrant friend of respondent Randy Bendzula for selling cocaine. The seller was told that he could avoid deportation by cooperating with the police and implicating those who had supplied drugs to him. He implicated respondent by asking his help to get drugs on five occasions during the first half of 2000. The first and last purchases occurred in Hennepin County; the second, third, and fourth occurred in Scott County. Respondent was similarly asked to assist police but declined to act as an informant.

A Scott County jury found respondent guilty on two charges of first-degree sale of cocaine. The presentence investigation indicated that respondent's sentence on the first count, with four criminal history points, would be imprisonment for 134 months under sentencing guidelines and that the sentence on the second count would be 158 months; the report recom-

mended that the sentences be served concurrently. At the sentencing hearing, respondent moved for a downward departure to 58 months imprisonment. The trial court sentenced respondent to 84 months.

## ISSUE

Did the sentencing judge exceed his authority in determining cause for a downward durational departure when sentencing respondent?

## ANALYSIS

### I. Standard of Review

■ The decision to depart from sentencing guidelines rests within the trial court's discretion and will not be reversed absent a clear abuse of that discretion. *State v. Givens,* 544 N.W.2d 774, 776 (Minn.1996). Fundamentally, respondent reminds this court, the supreme court recognizes the superior sentencing capacity of the trial court, observing that the sentencing judge "sits with a unique perspective on all stages of a case, including sentencing, and the trial judge is in the best position to evaluate the offender's conduct and weigh sentencing options." *State v. Sanders,* 598 N.W.2d 650, 656 (Minn.1999).

■ It follows that this court is "loath to interfere" with the trial court's sentencing decision. *State v. Case,* 350 N.W.2d 473, 476 (Minn.App.1984). Correction of the trial court is acceptable only on this court's "strong feeling" that a sentence is inappropriate, *State v. Malinski,* 353 N.W.2d 207, 209 (Minn.App.1984), *review denied* (Minn. Oct. 16, 1984), and its "collective, collegial experience" that a sanction is disproportionate to the severity of the offense, *State v. Norton,* 328 N.W.2d 142, 146 (Minn.1982); *State v. Behl,* 573

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

N.W.2d 711, 714 (Minn.App.1998), *review denied* (Minn. Mar. 19, 1998).

Appellant maintains that this is the unique case calling for an appellate determination, based on its assessment of departure considerations, that there is no room for any exercise of trial court discretion.[1] *See State v. Spain*, 590 N.W.2d 85, 88 (Minn.1999) (reciting need for aggravating circumstances; reducing to a double departure, 96 months, the trial court's 144–month triple departure). We reject these assertions based on a review of explicit guidelines provisions upholding trial court discretion and our examination of the court's application of the law to the particular circumstances of this case.

## II. Trial Court Discretion and the Sentencing Guidelines

■ The Minnesota Sentencing Guidelines eliminate neither trial court sentencing options nor the court's obligation to evaluate an offender's conduct in choosing among those options. Under the guidelines, should departure be considered, it is the sentencing judge's task to determine what conduct is atypical to the statutory offense, on the basis of attention to the unique "circumstances" of the "individual case." Minn. Sent. Guidelines II.D. To assess the weight of atypical, individual circumstances, the guidelines establish a

judicial task to determine which are "substantial" and "compelling." *Id.*[2]

The guidelines decline the attempt to enunciate all of the circumstances that the trial court might determine to be atypical, dissimilar, or different, and which may be, depending on the facts of the case, both substantial and compelling. Explicitly recognized atypical factors have been addressed by the parties and will be reviewed in this opinion, but the guidelines declare the list of these factors is *"nonexclusive."* Minn. Sent. Guidelines II.D.2 (emphasis in original).[3]

If the trial court's sentence is a departure from the guidelines, the court is to provide written reasons demonstrating why the departure is "more appropriate, reasonable, or equitable than the presumptive sentence." Minn. Sent. Guidelines II.D. This judicial determination will "avoid sentencing that is either mechanical or callous." *State v. Curtiss*, 353 N.W.2d 262, 264 (Minn.App.1984).

### A. Additional Departure Considerations

When departing from the sentence calculated under the guidelines, the sentencing judge "should pronounce a sentence which is proportional to the severity of the

---

1. In the state's view, we should declare this to be a case where the sentencing guidelines confine the trial court's function to acknowledgement of the guidelines sentence, to a recognition of culpability solely by considering the conviction that was successfully pursued by police and prosecutors. The state asserts that the court's decision falls within a category of sentencing whereby the aims of the state's sentencing guidelines are "eviscerated" by departures "on the basis of personal beliefs, bias, whim, or caprice." Because identification of cases of such a kind strictly limits the trial court's function in exercising discretion, we are mindful as well that it implicates the independence of the judiciary under the rule of law.

2. Guideline comments enunciate the trial court role with further substance and no less generality. The drafters call for use of presumptive sentences with a "high degree of regularity," departing in only a "small number of cases." But the comments ungrudgingly add that the "judge may depart" when that is "deemed to be more appropriate, reasonable, or equitable than the presumptive sentence." Minn. Sent. Guidelines cmt. II. D.01, .03, .201.

3. The listed atypical factors are "illustrative and are not intended to be [either] an exclusive or exhaustive list of factors" that may be used as reasons for departure. Minn. Sent. Guidelines cmt. II.D.201.

offense of conviction and the extent of the offender's prior criminal history." Minn. Sent. Guidelines II.D. Thus, the court must consider the offender's conduct and the impact of the offender's record.

Additional trial court considerations arise because, according to this guidelines provision, the court "should take into substantial consideration" the purposes of the guidelines. *Id.* Under the purpose clause of the guidelines, which calls for consistency and repeats the standards for departure, the guidelines are declared "advisory to the sentencing judge." Minn. Sent. Guidelines I.

The purpose clause explicitly calls for the sentencing judge's consideration of departure. Although the judge must look to the equity of similar sanctions for similar offenders, equity "requires," the guidelines declare, that the court "ought to" depart for a felon "substantially different from a typical case." *Id.* The court is not to take lightly the burden to consider departures.

## B. Downward Departures

Interjecting the purpose clause into departure determinations establishes an additional consideration that particularly bears on the issue of downward departures. The guidelines eliminate the need for courts to take judicial notice of correctional costs that bedevil state lawmakers. When the trial court finds circumstances for a downward departure, the court is required to be mindful that the "capacities of state and local correctional facilities are finite." *Id.* To "ensure" carefully determined use of those facilities, the court is to determine sanctions that are the "least restrictive necessary" to achieve the purposes of the sentence. *Id.*[4]

Finally, downward departures are the topic of an expressly stated factor the trial court is to employ in determining atypical circumstances of a case. After stating more particular factors, the guidelines declare that a downward departure may be based on "[o]ther substantial grounds," although not amounting to a defense, that "tend to excuse or mitigate the offender's culpability." Minn. Sent. Guidelines II. D.2.a(5). Without further express guidance, the sentencing judge is cast upon the waters of judicial discretion to examine the culpability of the offender in the individual circumstances of the case.

In sum, although the guidelines, as intended, produce consistency, they also preserve traditional trial court discretion to employ broadly stated standards, both in determining cause to depart and in determining an apt departure. And the guidelines expressly enlarge the trial court's discretion when assessing reduced culpability and determining a downward departure.

## III. Trial Court's Exercise of Discretion

■ Because the trial court in this case dealt with the departure issue both deliberatively and thoroughly, and because the court adequately identified considerations favoring its downward departure that were both atypical and substantial, we must defer to its judgment. The court fulfilled its mandate to explain why its departure was "more appropriate, reasonable, or equita-

---

4. It is not incidental that supreme court language limiting trial court sentencing discretion has been found in cases correcting excessive upward departures. *See, e.g., Spain,* 590 N.W.2d at 89 (reducing a triple upward departure to the double upward departure that "[a]s a general rule, [is] the maximum upward departure in sentence length"); *cf.,*

*State v. Martinson,* 671 N.W.2d 887, 891 (Minn.App.2003) (affirming downward durational departure, 75 of 150 months (citing *State v. Kindem,* 313 N.W.2d 6, 7 (Minn. 1981)), to determine that "this court generally will not interfere with the exercise of [district court] discretion").

ble than the presumptive sentence." Minn. Sent. Guidelines II.D. There is no merit in appellant's assertion that this is a case where the guidelines have obliterated the occasion for the trial court's exercise of discretion.

In its sentencing order, the trial court stated considerations to support its conclusion that the case did not involve "the typical controlled substance crime." The court concluded on the record that these factors tended to "mitigate [respondent's] culpability."

The typical drug seller, the trial court observed in its order, is suspected, investigated, arrested, and prosecuted. Respondent, in contrast, was "prompted" to sell drugs by the efforts of the police in enlisting one whom respondent considered a friend as an informant because the police hoped respondent would, in turn, become an informant and identify his source of supply. Respondent later declined to act as an informant. These facts do not rise to the level of an entrapment defense, but this does not preclude their consideration as a mitigating factor. See Minn. Sent. Guidelines II.D.2.a(5) (mitigating factors may include grounds that tend to excuse culpability, although not amounting to a defense).

This assessment of appellant's culpability was corroborated by other facts recited by the sentencing judge, "[o]ther substantial grounds ... which tend to excuse or mitigate [respondent's] culpability." Id. First, respondent, last convicted in 1992, was released without bail and without incident for the three years elapsing between his arrest and this sentencing. Second, when he first acted with the police informant to get cocaine from the suspected supplier, respondent was not arrested and charged as an offender, but prompted instead to arrange four additional transactions that occurred over the span of five months; the trial court observed that this fact diminished the suggestion that respondent's conduct constituted a serious threat to public safety. Third, the evidence shows that respondent purchased drugs for himself and for his friend, the police informant, but does not show respondent otherwise distributed cocaine to persons in the community.[5]

Appellant argues that the trial court both misstated the facts and erred in applying the law. But appellant presents no facts to refute the court's finding that the police considered respondent a means to an end: they hoped he would lead police to his supplier. Nor does appellant identify any clear, reversible errors in the trial court's recitation of the facts. The evidence in the trial and sentencing records sustains the court's findings.

Appellant's three allegations of erroneous application of the law are similarly unfounded. First, appellant opposes the sentencing judge's references to the favorable police treatment of the informant who bought cocaine from respondent, arguing that favorable treatment of one offender does not minimize the culpability of another. But equity in sentencing is a purpose of the sentencing guidelines. Minn. Sent. Guidelines I; see Minn. Sent. Guidelines II.D. (requiring that the sentencing judge, when prompted by the facts to consider departure, give substantial consideration to purpose clause). The trial court did not abuse its discretion in considering an apparent inequity in the punishment meted out to similar offenders. See State v. Back, 341 N.W.2d 273, 277 (Minn.1983);

5. Respondent contends that the trial court's analysis of his culpability comes within the mitigating factor that is expressed in the guidelines for an offender who plays a minor or passive role in the crime. Minn. Sent. Guidelines II.D.2.a(2). The state correctly observes that respondent was the sole actor in getting a quantity of drugs and selling them.

*State v. Vazquez,* 330 N.W.2d 110, 112 (Minn.1983) (permitting consideration of sentences of co-defendants and other offenders).

Second, appellant contends that the trial court erred in considering the scarcity of correction facility resources when it sentenced respondent because that scarcity does not affect respondent's culpability. But the guidelines foster consideration of the point: use of the "finite resources" of correctional facilities is among the four principles of the sentencing guidelines. Minn. Sent. Guidelines I. The trial court did not abuse its discretion in considering a principle of the guidelines.

Third, appellant asserts that the sentencing judge erred in mentioning, on the record, a reduced sentence offered to respondent during negotiations two years earlier. But the judge clearly and repeatedly said, "I am not considering that." Any error, if it occurred, was harmless.

■ Finally, appellant alleges procedural error in the trial court's failure to give notice that it was considering a downward departure. See Minn. R.Crim. P. 27.03, subd. 1(A)(4) (judge shall advise counsel if facts ascertained during trial cause consideration of departure from sentencing guidelines to be appropriate). Respondent concedes that the trial court did commit this procedural error but contends that no relief is appropriate because the state demonstrates no prejudice. *See State v. Bock,* 490 N.W.2d 116, 122 (Minn.App. 1992) (no relief for procedural error required absent demonstration of prejudice), *review denied* (Minn. Aug. 27, 1992). Appellant did not allege any prejudice in its original brief and did not file a reply brief. Moreover, because respondent moved for a downward durational departure, appellant had notice that the issue would be raised even without notification from the trial court. *See id.* (no prejudice where no objection to lack of notice at sentencing;

motion was made for departure, and request for departure was repeated at sentencing hearing).

## DECISION

The trial court's sentencing decision falls within the parameters of discretion traditionally guaranteed to that court and confirmed by the Minnesota Sentencing Guidelines.

**Affirmed.**