*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0383**

State of Minnesota,
Respondent,

vs.

Damon Marvin Henning, Jr.,
Appellant.

**Filed December 18, 2023**
**Affirmed**
**Frisch, Judge**

Scott County District Court
File No. 70-CR-20-15276

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Ronald Hocevar, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Amy Lawler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Larkin, Presiding Judge; Johnson, Judge; and Frisch, Judge.

**NONPRECEDENTIAL OPINION**

**FRISCH**, Judge

        Appellant challenges the district court's denial of his motion for a downward dispositional or durational departure in sentencing following his conviction for second-

degree assault. Because the district court did not abuse its discretion in imposing the presumptive guidelines sentence, we affirm.

## FACTS

Respondent State of Minnesota charged appellant Damon Marvin Henning Jr. with two counts of second-degree assault with a dangerous weapon in violation of Minn. Stat. § 609.222, subd. 1 (2018). Henning pleaded guilty to one count of second-degree assault with a dangerous weapon with no agreement with the state as to sentencing. At the plea hearing, Henning admitted that a passenger in a vehicle that he was driving pointed a firearm at two people in the street in a threatening manner. Henning agreed that by driving the vehicle, he aided and abetted in the commission of the assault. The district court ordered Henning to cooperate with a presentence investigation (PSI). Henning did not cooperate in the preparation of the PSI.

Before sentencing, Henning moved for a downward dispositional or durational departure from the presumptive sentence set forth in the Minnesota Sentencing Guidelines. Henning argued that a dispositional departure was appropriate because he had the ability to be successful on probation and he accepted responsibility for the offense. He argued that a durational departure was appropriate because the assault was less serious than the typical offense and his role in the offense was minimal. Henning also submitted data to the district court regarding dispositional departures for defendants convicted of second-degree assault with a criminal-history score of zero. The data showed that 76% of defendants convicted of second-degree assault with a criminal-history score of zero and sentenced between 2016-2020 received a downward dispositional departure.

At the sentencing hearing, Henning's counsel made similar arguments to those set forth in his memorandum. Counsel acknowledged that Henning did not participate in the preparation of the PSI but explained that his lack of participation was due to a change in contact information. Counsel argued that Henning had since been in contact with probation. Counsel requested a continuance to complete a new PSI, which the district court denied. Henning made a statement on his own behalf in which he expressed remorse, stated that he had no other offenses either before or after the incident, and emphasized that he was motivated to remain in the community to care for his son.

The district court acknowledged that the principal actor in the assault received a probationary sentence and that Henning did not "actually physically point the gun." But the district court also noted that Henning "was with the individual that pointed the gun at the other people." The district court explained that it considered the offense to be a very serious public-safety incident and recognized the extreme fear it caused the victim. The district court stated that the record did not support a determination that Henning was particularly amenable to probation, noting that Henning did not cooperate with the preparation of his PSI and that he was currently in violation of probation for another incident that resulted in a conviction for interference with a 911 call. The district court also determined that there were no other mitigating factors that would support a downward dispositional departure. The district court then sentenced Henning to the presumptive sentence of 36 months in prison. Minn. Stat. § 609.11, subds. 5, 9 (2018) (setting forth a legislative mandatory minimum sentence of 36 months for certain crimes committed with a firearm); Minn. Sent'g Guidelines 4.A. (Supp. 2019) (setting forth the presumptive

3

sentence for a severity-level six offense for a person with zero criminal-history points at 21 months).

Henning appeals.

## DECISION

A district court has great discretion when making sentencing decisions, and we will reverse those decisions only when the district court abuses that discretion. *State v. Soto*, 855 N.W.2d 303, 307-08 (Minn. 2014). A sentence that is imposed in accordance with the guidelines is presumed to be appropriate. Minn. Sent'g Guidelines 2.D.1 (Supp. 2019). "We will affirm the imposition of a presumptive guidelines sentence when the record shows [that] the sentencing court carefully evaluated all the testimony and information presented before making a determination." *State v. Johnson*, 831 N.W.2d 917, 925 (Minn. App. 2013) (quotation omitted), *rev. denied* (Minn. Sept. 17, 2013).

If presented with "substantial and compelling circumstances," a district court may depart from the presumptive sentence. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981); *see also* Minn. Sent'g Guidelines 2.D.1 (stating that a "court may depart from the presumptive disposition or duration" of a guidelines sentence if "there exist identifiable, substantial, and compelling circumstances to support a departure"). But a district court may choose not to depart without abusing its sentencing discretion even if it determines that factors exist that might support a sentencing departure. *See State v. Walker*, 913 N.W.2d 463, 468-69 (Minn. App. 2018) (concluding that a district court did not abuse its discretion in declining to dispositionally depart despite considering "evidence of factors that could have supported a departure if they had been substantial or compelling"). We

reverse a sentencing court's refusal to depart only in "rare" cases. *Id.* at 468 (quoting *Kindem*, 313 N.W.2d at 7).

**I.    The district court did not abuse its discretion in denying Henning's motion for a downward dispositional departure.**

Henning first argues that the district court abused its discretion by denying his motion for a downward dispositional departure because it failed to consider factors supporting a departure, including mitigating factors, and because Henning is particularly amenable to probation.

"A dispositional departure typically focuses on characteristics of the defendant that show whether the defendant is particularly suitable for individualized treatment in a probationary setting." *State v. Solberg*, 882 N.W.2d 618, 623 (Minn. 2016) (quotation omitted). The relevant factors in assessing amenability include "the defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family." *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982). "[M]erely being amenable to probation" is insufficient; "requiring a defendant to be *particularly* amenable to probation . . . distinguishes the defendant from most others and truly presents the substantial and compelling circumstances that are necessary to justify a departure." *Soto*, 855 N.W.2d at 308-09 (quotation omitted).

The record shows that the district court considered factors related to Henning's motion for a dispositional departure. At the sentencing hearing, the district court heard arguments about Henning's age, his employment, and that he was the sole caretaker for his son. The district court also heard from Henning about his desire to continue taking care of

his son. But the district court determined that Henning was not particularly amenable to probation in part because he had not participated in the preparation of the PSI and because he was not compliant with probationary terms related to another conviction, including that he failed to maintain contact with probation and did not complete domestic-abuse programming. The district court also noted that Henning had a month-old warrant out for that probation violation. We acknowledge that the district court did not explicitly discuss each of the *Trog* factors or acknowledge evidence in the record regarding each factor, but a district court is "not required to state its reasons for not departing on the record." *Johnson*, 831 N.W.2d at 926. And we are not persuaded that the sentencing statistics submitted by Henning changes the district court's discretion in determining the propriety of a sentencing departure because, by its very nature, a district court's decision as to whether to depart dispositionally is based on the nature of the individual. *Solberg*, 882 N.W.2d at 623.

We therefore discern no abuse of discretion by the district court in denying Henning's motion for a downward disposition departure.

## II. The district court did not abuse its discretion in denying Henning's motion for a downward durational departure.

Henning alternatively argues that the district court abused its discretion in denying his motion for a downward durational departure because the assault itself and Henning's conduct were less serious than in a typical offense.

"A durational departure must be based on factors that reflect the seriousness of the *offense*, not the characteristics of the offender." *Id.* And a defendant's conduct must be "significantly less serious than that typically involved in the commission of the offense" to justify a downward durational departure. *Id.* at 624.

Henning primarily argues that he was entitled to a durational departure based on *State v. Curtiss*, 353 N.W.2d 262 (Minn. App. 1984). In *Curtiss*, an 18-year-old defendant stole beer from the breezeway of an occupied house while on probation and was charged with first-degree burglary. 353 N.W.2d at 263. The district court imposed a 33-month prison sentence, denying the defendant's request for a downward durational departure to an 18-month sentence because there were "no justifiable reason[s] to deviate" from the guidelines. *Id.* On appeal, we remanded for resentencing, noting that the departure analysis was "abandoned before . . . comparing reasons for and against departure" and concluded "[t]his is not that rare case where we interfere with the exercise of discretion, but a case where the exercise of discretion has not occurred." *Id.* at 263-64.

Unlike the situation in *Curtiss*, the district court here did not abandon an analysis of whether reasons supporting a durational departure existed, including the nature of the offense and Henning's role in the offense. The district court explicitly evaluated the seriousness of the offense, explaining that it considered the offense be a very serious public-safety incident and "extremely frightening" for the victim. And the district court acknowledged that Henning "did not actually physically point the gun," but noted that Henning "was with the individual that pointed the gun at other people." Because the district court analyzed factors relevant to Henning's motion for a durational departure before

7

imposing the presumptive sentence, we discern no abuse of discretion in the district court's sentencing decision.

**Affirmed.**